Case 21-2931, James M. Stevens v. Michigan Department of Corrections et al. Argument not to exceed 15 minutes per side. Ms. Walker, you may proceed for the appellant. Good morning. Good morning. Good morning, and may it please the Court. Johanna Walker, Court-Appointed Counsel on behalf of Appellant Mr. James Stevens. Mr. Stevens' claims should have proceeded to trial when he identified genuine disputes on his, oh and excuse me, I'd like to reserve three minutes. Got it. Mr. Stevens' claims should have proceeded to trial when he identified genuine disputes on his discrimination and denial of access claims. The District Court reached the opposite result by reading Section 504 to exclude paid prison labor and by resolving key factual disputes in MDOC's favor. Both errors warrant reversal. This Court should decline MDOC's invitation to avoid the merits entirely. Its standing arguments are meritless and its arguments on vicarious liability are both wrong and forfeit. This Court should reach the merits and it should reverse the District Court's decision. I welcome any of this Court's questions on whether the best reading of Section 504 permits state prisons to discriminate against paid prison workers solely because of their disability. Can I, one thing that's confused me a little bit about the case is just looking at 504 and it seems like everybody's mainly thought of it as an employment case and I'm right in thinking there's a dichotomy there. 504 is not just about employment discrimination and it can also be subjected to discrimination under any program. Is there general agreement that any program would include prison related programs? Yes. Is there any dissent on that point? I mean, are there some folks that say, well, no, you really can't think of a prison and its programs or how they do things as something that's covered by 504? I don't think there's any dispute on that point and as early as 1999, this Court I think in Key v. Grayson has recognized that prisons and prisoners are covered under Section 504 broadly. So we do agree that there's kind of this odd singular fixation on the word employment in one definition of individuals with disabilities that Section 504 incorporates. But not exclusively. I mean, so, I mean, if you go, again, 504, disability as defined in Section 705.20, you go to that and A, it's true, it does refer to employment, but then B, certain programs, limitations on major life activities, that's definitely a definition that just picks up the ADA definition of disability, no limit to employment. We agree, Your Honor, and maybe the easiest way to resolve this case is to recognize that Section 504's incorporation of the definitions under 705.20 incorporate both of those definitions. The District Court was wrong to focus on employment when individual disability is defined far more broadly and to send it back to the District Court to resolve the employment discrimination or to allow the employment discrimination claim to proceed to the jury. I think that part of the singular focus on employment is Mr. Stevens alleged in his amended complaint two separate claims under Section 504. One alleged, quote, employment or discrimination in employment, and then the second claim alleged denial of access, denial of benefits. So the reason that it's structured this way is just because of the way that the claims were brought, the way that the District Court perceived these to be two different claims, and I think because it was alleged as an employment discrimination claim, the District Court picked up on that word employment and mistakenly defined it narrowly to only cover employers and employees. But we completely agree, Your Honor, that perhaps the most straightforward route in this case is to say there are two definitions, there's no question that Mr. Stevens falls within the second definition included under 705.20b, and that there are disputes of fact that preclude summary judgment on either the employment discrimination or the denial of access claim. Both of those claims should go to the jury. So just to make sure I'm getting this, you could, in other words, take the view inmates are not employees for whatever reason, but just accept that. But if they're not employees, they still can be programs, and the programs can be work-related jobs as part of your rehabilitation, part of being an inmate, frankly, and the program can be working in one thing versus another thing versus another thing, and if you prefer the first thing and you're not allowed based on disability, you're in the heartland of 504 would be the way to think about it. I think that's right. I would add just one caveat, Chief Judge Sutton. I think there is an importance to making sure that these theories of liability remain distinct because they may have implications in terms of the elements that Mr. Stevens has to present, the defenses that MDOC may raise, and the damages that are at stake. So for employment discrimination, that specifically pertains to the adverse employment action that Mr. Stevens suffered as a result of being terminated from food services and never restored to that position, which actually provides elevated wages as compared to other assignments within the prison. And the denial of access claim pertains to Mr. Stevens' denial from the paid work program generally. So are you saying that he had some right to demand a particular placement in employment or a particular program placement? No, Your Honor, not at all. So if he didn't have that right, you're saying that if he didn't like where he was placed and he can claim that he didn't get what he wanted because of his disability, that's all he has to show? I think there's one additional element here, especially for a claim for damages. Under Section 504, it's not only that you have to show for the employment discrimination claim that you have an adverse employment action, that it occurred solely because of your disability, but for claims for money damages, you also have to show deliberate indifference, and we don't think that's disputed on appeal. So we do think that there are really important safeguards that Section 504 provides to. I kind of hear the concern to be that an interpretation that broad would open the floodgates to Section 504 for anyone who has any qualms about the sort of assignment that they were provided by the prison. We think that the deliberate indifference standard and the causation standard, which says solely because of your disability, not because of your disability and administration concerns of the prisons, and because of some other reason why you might not get that paid work assignment. We think those are adequate safeguards to kind of the floodgates problem that I hear, Your Honor, to be concerned about. You say access claims, and I'm just looking at 504. Is the word access there, or is this just a nomenclature thing that the courts have used to shorthand what's going on? It's a bit of a shorthand for the exclusion from participation language that's used in Section 504. We think that Section 504 includes three types of prohibited conduct. One is discrimination broadly. That encompasses the employment discrimination claim. It's denial of benefits and exclusion of participation in a program. Okay, so I got it. So how about on, you know, fact disputes? I mean, because you've got to admit there's pretty modest damages here. I mean, there's a pretty modest thing going on, but fine. It seems to be enough for Article III, you know, standing. But it's not clear how much your client wanted. I mean, isn't it fair to say the record's ambivalent about that? He himself was like, ah, if I take this job, people are going to assume I'm contagious, et cetera. So what do we do with that? I mean, you must know what I'm saying. Sure. I think I hear a couple of things that your question is getting to, Your Honor. I think part of it is the amount of damages at stake, and part of it is whether Mr. Stevens really wanted this position. Yes. And so maybe it's the latter question is the one that I'll focus on first. I want to clarify that when Mr. Stevens said that he would prefer a non-food handling position, the record is, you know, viewed in the light most favorable to Mr. Stevens, shows that food services, despite the name of the program, offered a range of non-food handling positions. That's, you know, busing of tables, cleaning of dishes, clearing of the garbage disposal, distributing utensils. And so I don't think at all Mr. Stevens was ambivalent to working in food services. He just had a slight preference to not work in the serving line of food services. And, in fact, he presented evidence below saying that he was particularly interested in food services because the social worker recommended it to him. It would be particularly good for his mental health. And it offered an elevated pay scale, which was of particular interest to Mr. Stevens. So we don't think it's ambivalent, and we also don't think that pertains to the Section 504 inquiry, which is really focused on whether MDOC discriminated against Mr. Stevens solely because of his disability, not, you know, the degree of interest that Mr. Stevens had in a particular position. Your answer to the de minimis thing would be it's not de minimis because a week of differential wages is still a week of differential rate wages. Sure, we think it's not de minimis. First, for Article III standing points, the Supreme Court has said, you know, $5 is enough to pass through the Article III barrier. We also don't think it's de minimis. You know, I think it's unique because it arises in the prison context where wages are low, but if anyone else lost two weeks of wages, I think people would certainly view that as being substantial. We also have the period after he was transferred in which he received a lower rate of wages because he wasn't in food services anymore. So I do think there are really important questions about how much in damages are on the table and on remand. I think those would be resolved. But the key error here is that the district court granted summary judgment, said there was no liability on either the denial of access or employment discrimination claim, and both of those errors warrant reversal. Could you briefly address Hyler v. Brown, what your response is to that, is to Hyler? Sure. I think Hyler is not particularly on point for this case just because it involves a different version of Section IV. It involves a case of individual capacity liability. This, of course, is a claim against a public entity. Both this court and the district court found, and we do not dispute, that a public entity is the only proper defendant under Section 504 for these claims. So we don't think Hyler is on point or really probative of the analysis at all. Thank you. All right. You'll get your full rebuttal. Thank you very much. Mr. Thurber. Thank you, Your Honor. May it please the Court, John Thurber, Assistant Attorney General for the State of Michigan, on behalf of the Michigan Department of Corrections. This court should affirm the district court's decision to grant summary judgment on behalf of the Michigan Department of Corrections. The district court correctly found that the Rehabilitation Act does not apply in this situation and does not support a claim for employment discrimination. What do you take about this other way of thinking about it? I mean, I'm just looking straight out of 504. You know, no otherwise qualified individual with a disability. We've established the definition covers ADA, not just employment-related, be subject to discrimination under any program. I mean, well, maybe I don't know this. Is it true that the Michigan prisons get federal assistance? I'm assuming they do. Yes. Okay, so we've got that base covered. How do you think – what am I missing about that way of thinking about the case? So the district court looked at it from two different perspectives. Just how about what am I missing? Right. No, you're not missing that part of it. But what I would say is in terms of the disability or the access to programming claim, the district court looked at and the elements specifically that he has to show to set forth – he, the plaintiff, has to set forth to show a prima facie case that he was disabled, there's not a dispute over that, and the district court found no dispute. He has to show – Mr. Stephens has to show that he's otherwise qualified to participate in the program and that he has been excluded from the participation or denied the benefits of that program, subject to the discrimination because of his disability, and then he has to show that the program receives federal assistance. So what the district court looked at was the third prong of that test and it said essentially that he was not deprived of access to the program because while there was a delay, he showed up for the food service position, got sent back to his cell. He was never denied access to the programming overall. Well, I thought he wasn't able to work for a week or two. But he was never – there was never a denial of him being able to participate in the program in general, though. He wasn't – the district court looked at it and I think appropriately looked at it and said he doesn't have a right to a specific position. And there was a little bit of administrative – it took a little bit of – inmates in the prison, take it out of employment, and you have no right to do any one of them, all right? But there are five activities. Inmates have a certain time in the day when they do these activities. You show up for one of them and they say, no, you're disabled. We don't – so they – you didn't have a right to it. What does that have to do with it? If it's a program that is available, you're initially into it. No one denies you because of some non-disability-related consideration and then denies you because of disability. I'm puzzled what to do with that. Well, in this instance, he certainly wasn't denied access to the overall – I think we're focused too much on looking at this like a job, that it's – while he – I'm actually trying to take it out of that. I'm saying working is rehabilitation. Working is helping people learn to be responsible. Let's just not call them employees. I'll grant you that for sake of what I'm saying. It's a program for the betterment or keep people busy in prison, whatever you want to call it. He starts in it and then you have this statement, no, and then he's not doing it. But he wasn't denied it because within a week he was put on another position. That just shows how silly the case is. It's a week's worth of are you getting 550 or 750. Have you thought of mediation? When I was asked to take this case for oral argument, that thought ran through my head, that this was a very low-damages case. I had a colleague who coined the phrase constitutional small claims court, which is what often comes up with these kinds of prisoner cases, that they're very small damages. I would concede you're right that there are – well, at least – Is it worth having our mediator talk to the two of you or is that a non-starter? Well, I shouldn't say – I would never say never. I've used the court's mediation program before. These are big issues, though, I think, that while the damages in this case may be small, they are big issues that warrant resolution. Tell us how to construe 504 outside the employment context in a way that resolves this big issue. I mean, that's why you're here. You're saying it's not about the money. You really want to have the authority to offer programs and suddenly say you can't stay in this program because of your disability? Is that what you're looking at? I would go back to – and forgive me for sounding like a broken record here, Your Honor – but he wasn't denied access, though, because he was put – But wasn't the response that you can't be on the serving line – I mean, how is that not being denied that job based on the reasons stated by the person who said he couldn't be there in the presence of MDOC officials? Well, I would look at it because he was – while he didn't get that specific position, he was given a position, again, almost immediately. He didn't want that position. He said, I don't want to be here because people are going to think badly of me because I have Hep C. So I'm struggling with how he was denied anything at that point. After he was removed from that, if there's a denial, it has to come next, doesn't it? Yeah, I agree, Your Honor, that there's some evidence in the record – and I didn't handle this case below – but that there is some evidence that he perhaps sabotaged his position because he made that admission and perhaps – But aren't there kind of facts going both ways on that? Admittedly, that part of it, there are. Let me just – because I respect your point about big picture with the prisons. So tell me what I'm missing about this analogy. So let's just take it out of work. And you have in this particular prison, from 2 to 3 each day, there's some classes. No one has entitlement to anything. It's voluntary. You don't have to do it. You can do it. One is knitting. One is some kind of macrame. One is working on your writing. One is how to write a resume. There are just four different things. You can do any of them, none of them. You have no right to them. They're 2 to 3 each day. And unless you're in some discipline situation, you're allowed to show up. You just show up to one of them, the resume writing one. And they say, well, no, you can't do that. You have Hep C. And they're wrong about that. And so we would call that at least a cognizable claim of discrimination. Would we have to say that's not the kind of program here because it's voluntary, because it's in a prison? How would we rule your way under the language of the statute? Well, I think you would rule our way because he was still extended programming in general, though. No, but, I mean, is that really how this works? That as long as there's a program, you can't do resume, but you can work on your writing and you can work on your knitting. That's how this works? Yes, there's no right to a particular program. No, there's a right not to be discriminated in doing any program. I thought that's what this said. But the department doesn't have to provide you with the program that you want.  You're not entitled to the program you want, but you're saying, but you're entitled not to be excluded from a program because of your disability. Yes, that has to be right. Well, I mean, I think the department's obligation is to provide, broadly to provide programming, and that satisfies what 504 requires. But wait, I mean, they don't have to offer any of these programs. No, that's right. I mean, that would, I guess, correct. The department could say we're going to offer nothing and we're going to have people sit there idly and do nothing. I agree, right. So you couldn't say to somebody, I'm here for the resume writing program. They look at you and say, well, you only have one leg. We don't let people with one leg do this. It's absurd, right? But that's what they say. It's blatant discrimination. It has nothing to do with the resume writing. It has to be the case that 504 covers that. I just don't, I feel like I'm missing something. No, that's not what we're facing here. Okay, okay, you've been here long enough to know hypotheticals are never about the exact facts of the case. Help me with the hypo I just gave you. You show up for the resume program. You have no right to the program. They can shut the whole program down tomorrow. There are three other people in it. They look at you. You have one leg. And they say, we don't let people with one leg do this. I think if the department provided you an alternative program, then that would be acceptable. But not about resume writing. And other people continue to get the resume thing. But you're not entitled to a particular program. But you're not entitled in this case based by a clear statement on the record on a disability. So your statement is that we can deny you that because you have one leg, because you have Hep C, after having already offered it. I don't think anybody disputes you don't have to offer the programs. But if you offer them, you can't discriminate. Well, I guess I would respectfully disagree. I think if you offer broad programming and you offer alternatives, then the department could put you in whatever program it deems necessary. I mean, I understand it sounds unsavory that someone would say we don't like you because you have one leg. But I believe that that's what the statute allows. It doesn't require the department to have a particular program. If the department offers programming broadly, you can be put in whatever program the department has. I have a different question. And that is, in this particular case, when he said he didn't think he should be doing the line serving because he had Hep C. And who was it who said, you're right, you can't do it because you have Hep C? Who made that decision? Well, as I understand the record, it was his initial conversation with Ms. LaRoe, L-A-R-O-E, who was the contract food service employee. And then there was some discussion in my reading of the complaint that there was a – Judge Tranch, you referenced, right? There was an MDOC corrections officer who was nearby who, at some point during this exchange, intervened and said, no, you shouldn't be here. And so there was, in that sense, was there some MDOC involvement? At the risk of not wanting to sound too much like I testify – I mean, the officer's job in that respect, though, I think was simply – Was there a genuine issue of whether MDOC had a part in saying, no, you can't be in the food service area? I would say no, because the department immediately, or as soon as was administratively possible, placed him back into another position. That's not the question. Judge Batchelder is asking you if MDOC was present and had, in some capacity, acted to tell him he could not, he should not be in that position. That's her question. I'm not even zeroed in on the particular food service serving position, which he was the one who said he shouldn't be doing this. My question is, he wanted another position, as I understand this record, he wanted another position but still in food service because it was going to be a better deal for him in terms of how hard he wanted to work and how much money he could make. So my question is, what part did MDOC play in not allowing him to be in the food service area at all? I don't think the MDOC – well, in fact, I think the MDOC – I would say the MDOC didn't directly play any role in that. Did it cancel the – the MDOC reassigned him. That was their choice. It was, but the department, again, has the ability to do that because they're not required to give him any particular position. But that's not even my exact question. My question is, we have a contract provider of the food service and it was the contract provider in the first instance who told him, no, you can't be on this line. Right. Could MDOC overrule that and put him back into food service or did the contract provider have the ability to say no? I would say ultimately the MDOC in that situation would have had the ability to do that. My understanding of the contract is that the MDOC would have made ultimate – would have had ultimate authority over an issue like that. And MDOC policy certainly – I mean, we know subsequently what happened is that they – when he went back to his – Ms. Sage, who was the classification director, went back and did some more inquiry and looked and found that hepatitis C should not have been a barrier, at least in this particular circumstance, to him working in the kitchen. So the MDOC did – MDOC policy would have governed that situation. So the MDOC would have had the ultimate authority, correct, in that situation. I think we're good. All right. Very good. Thank you. I appreciate all the court's questions. I was just going to touch briefly – I see I've got 35 seconds left to sum up very briefly. I would ask that this court – I would respectfully ask that this court affirm Judge Maloney's decision granting summary judgment on – to the Department of Corrections and to affirm on both counts that the way – at least in terms of the way Judge Maloney structured his opinion as to the employment claim that there was not a claim for – there was no claim for employment discrimination because the Department of Corrections is not an employer under the Rehabilitation Act and as to the discrimination claim under 504 that – They both seek the same damages, by the way, the access and employment claim. I would think those damages would meld together, Your Honor. Yes, correct. I would think there would certainly be overlap in those two. Yep. All right. Thank you very much. Thank you, Your Honor. Ms. Walker, you have a few minutes here. Thank you, Your Honors. Just three points on rebuttal. First, Chief Judge Sutton, I think you're exactly right that MDOC's position seeks authority to discriminate against prisoners solely because of their disability. And I think that position has been made clear at argument. Second, I think it's exactly right that the fact that a prisoner doesn't have a protected liberty interest in a particular position does not change the fact that they have a right under federal law not to be discriminated against solely because of their disability. And I actually agree with MDOC, my friend on the other side, that this case presents very big issues. The purpose of Section 504 was to eliminate barriers to folks with disabilities being able to participate in their communities. Those barriers exist not only when someone is discriminated against, but when they suffer the dignitary harm that comes with being said, being told, no, you cannot participate in this program or activity that receives federal financial assistance solely because of your disability. We think that is wrong. We think that is not what Congress intended. And we think that an affirmance in this case would reach that exact result. So we ask that this court reverse the district court on both claims and remand for Mr. Stevens' claims to proceed to trial. Okay. Thank you very much, Ms. Walker. And thank you, Mr. Thurber.  And, you know, a lot of people to think about standing behind you when you're answering questions. So we appreciate that. And Ms. Walker did this pro bono, and, you know, Mr. Stevens had a lucky day when you came across his world and took on this case. So you did a terrific job, and we're really grateful for both of your work and both the briefs and the arguments. And above all, answering our questions, which is never fun, but very helpful to us. So thanks a lot. The case will be submitted.